# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Stephen Gunnells and Kimberly G. Compton as Personal Representatives of the Estate of Harry C. Gunnells and the Estate of Barbara New Gunnells,<br><br>                Plaintiffs,<br><br>v.<br><br>Colonial Management Group, LP<br>d/b/a Columbia Metro Treatment Center,<br><br>                Defendant. | C/A No. ____3:16-3302-TLW_____<br><br><br>**COMPLAINT**<br>(Jury Trial Demanded) |

Plaintiffs, Stephen Gunnells and Kimberly G. Compton as Personal Representatives of the Estate of Harry C. Gunnells and the Estate of Barbara New Gunnells ( hereinafter "the Gunnells") by and through their undersigned counsel, bring this wrongful death and survival action against Defendant Colonial Management Group, LP d/b/a Columbia Metro Treatment Center, a so-called drug treatment center that profits from dispensing methadone—a highly intoxicating, federally controlled substance used to treat opiate addition. Under the guise of drug treatment, and over the course of many years, Columbia Metro added methadone to an already dangerous list of prescription and illicit drugs routinely taken by Robert H. Moore, Jr. without making any effort to detox or ween him from those substances.

Mr. Moore, under the influence of a mix of methadone provided by the Defendant and other drugs while driving his truck, crossed the center line into oncoming traffic, and collided with the vehicle Decedents and their grandson were traveling in, killing all involved. The Gunnells were unable to free themselves from their vehicle with the injuries they sustained and burned to death.

Plaintiffs, the Gunnells' children and Personal Representatives, would respectfully show unto the Court as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Stephen Gunnells is a citizen of the State of South Carolina and a resident of Lexington County, and co-personal representative of the Estate of Harry C. Gunnells and the Estate of Barbara New Gunnells. The Estates are filed in the Saluda County Probate Court. Stephen Gunnells is the Gunnells son, and brings this action on behalf of their estates pursuant to South Carolina Code § 15-5-90, and on behalf of statutory beneficiaries pursuant to South Carolina Code §§ 15-51-10, et seq.

2. Plaintiff is a citizen of the State of South Carolina and a resident of Bamberg County, and co-personal representative of the Estate of Harry C. Gunnells and the Estate of Barbara New Gunnells. The Estates are filed in the Saluda County Probate Court. Kimberly G. Compton is the Gunnells daughter, and brings this action on behalf of their estates pursuant to South Carolina Code § 15-5-90, and on behalf of statutory beneficiaries pursuant to South Carolina Code §§ 15-51-10, et seq.

3. Defendant Colonial Management Group, LP d/b/a Columbia Metro Treatment Center is a foreign for-profit limited partnership organized under the laws of the State of Delaware with its corporate headquarters and principal place of business in Orlando, Florida. Colonial Management Group, LP (CMG) operates 64 methadone clinics in the United States, one of which is located in West Columbia, South Carolina and does business under the name Columbia Treatment Center and/or Columbia Metro Treatment Center. The Defendant is hereinafter referred to as "Columbia Metro".

4. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this claim occurred in the district.

## FACTS

6. Prior to 2011, Mr. Moore battled a five-year addiction to MS Contin and Oxycodone—two highly addictive opioids.

7. In 2011, Mr. Moore sought treatment for his opiate addiction as a patient at Columbia Metro's West Columbia clinic.

8. The same day he applied, Columbia Metro began dispensing methadone to Mr. Moore and continued to do so from June 2011 until the time of his death on November 20, 2015, despite the fact the mr. Moore continued to take other drugs in violation of the Defendant's policies.

9. Columbia Metro patients, including Mr. Moore, pay cash, and only cash, as the company does not accept checks, debit cards, or credit cards.

10. Upon information and belief, Columbia Metro's West Columbia facility alone generates $1.2 million in revenue selling methadone to addicts. The Defendant operates 64 other clinics throughout the United States.

11. During Mr. Moore's so-called treatment, he was subjected to weekly urinalysis tests by Columbia Metro. The results of these urine tests indicated that Mr. Moore continued to use opioids along with as slew of other prescriptions and illicit drugs, including, at any given

time, amphetamines, Adderall, cocaine, Lortab (an opioid), marijuana, OxyContin, Percocet, and Xanax (benzodiazepine).

12. Even though Columbia Metro and its employees were aware of Mr. Moore's continued drug abuse, Columbia Metro continued to titrate-up his methadone consumption to the highest possible daily dose.

13. Columbia Metro also increased to the second highest possible level the number of daily doses (i.e., six doses) Mr. Moore was permitted take from the facility and consume outside the presence of Columbia Metro staff.

14. Columbia Metro never made any effort to "detox" Mr. Moore or ween him from his use of the addictive substances for which he initially sought treatment.

15. On November 13, 2015, Mr. Moore was drug tested by Columbia Metro and the test indicated he was positive for methadone, amphetamines, Xanax, and OxyContin.

16. On November 20, 2015, at approximately 5:30 a.m., Mr. Moore visited Columbia Metro's West Columbia clinic and ingested 170 mL of methadone and was given six additional 170 mL doses to take home for self-administration during the next six days.

17. At approximately 5:45 p.m. that same day, the Gunnells along with their grandson were traveling east down U.S. Highway 378 in the outermost left-hand lane. The vehicle was traveling at approximately 55 miles per hour, the posted speed limit.

18. Decedent Harry Gunnells, was driving the vehicle, and Decedent Barbara Gunnells, was riding in the back seat behind their grandson.

19. At the same time, Mr. Moore was driving a black Chevy Silverado, traveling west down U.S. Highway 378 in the innermost right-hand lane. Moore's vehicle was traveling at

4

approximately 70 miles per hour, 15 miles per hour in excess of the posted speed limit, under the influence of the drugs provided by the Defendant.

20. As Moore's vehicle approached the Gunnells' vehicle, Mr. Moore abruptly swerved left of center into oncoming lanes of traffic.

21. As he crossed into the inside-most lane of oncoming traffic, Mr. Moore sideswiped a van, and then continued forward on the wrong side of the road. When Mr. Moore's vehicle reached the outer-most lane of oncoming traffic, he collided head-on into the Gunnells' vehicle

22. Upon information and belief, Mr. Moore did not apply his brakes but struck the Gunnells' vehicle at full speed.

23. After being struck by Mr. Moore's truck, the Gunnells' vehicle burst into flames, spun violently off the road, and came to rest in the brush along the shoulder of the road.

24. The force of the impact and the fire that ensued trapped the occupants of the Gunnells in the vehicle.

25. The Gunnells were killed on shortly thereafter.

26. The Gunnells sustained significant, painful injuries, but remained conscious until they ultimately died.

27. Mr. Moore was taken to Palmetto Richland Hospital, where he also died from his injuries. A toxicology analysis performed by the South Carolina Law Enforcement Division later revealed that at the time of the accident, Mr. Moore was under the influence of methadone, Xanax, and Adderall.

FIRST CAUSE OF ACTION
(Wrongful Death - Negligence/Negligence *per se*/
Gross Negligence/Willful, Wanton, and Reckless Conduct)

28. Each of the foregoing paragraphs are incorporated herein.

29. Columbia Metro owed a duty of care third parties, including the Decedents, which arises from:

   a. The inherently dangerous dispensation of methadone to a known drug addict and continuing drug user, such as Mr. Moore;

   b. Columbia Metro's actual knowledge that Mr. Moore continued to use prescription and illicit drugs while it administered intoxicating drugs to Mr. Moore;

   c. Columbia Metro's unique knowledge of the specific risk posed by Mr. Moore and his continued prescription and illicit drug use coupled with methadone use, which was unavailable to the public at large or third parties like the Gunnells such that they had no way to protect themselves from the danger he posed;

   d. Columbia Metro's decision to dispense methadone not as a substitute for another drug, but *in addition to* the already dangerous cocktail of substances it knew Mr. Moore was routinely impaired by;

   e. An affirmative obligation to warn Mr. Moore of the dangers to himself and others posed by his methadone use and his use in conjunction with other drugs;

   f. An affirmative obligation to intervene to protect Mr. Moore and others after Columbia Metro's dispensation of methadone to Mr. Moore caused him to become intoxicated at an unreasonably dangerous level; and

   g. State and federal law imposing strict limits on the dispensation of methadone to drug addicts like Mr. Moore.

30. Columbia Metro, by and through the acts and omissions of its agents, servants, and employees, breached its duty of care and was negligent, grossly negligent, wilful, wanton, and/or reckless in one or more of the following ways:

a. Dispensing methadone to Mr. Moore;

b. Dispensing an excessive, unsafe dose of methadone to Mr. Moore;

c. Dispensing more than one dose of methadone to Mr. Moore to be consumed outside the presence of facility staff;

d. Dispensing methadone to Mr. Moore while knowing he continues to use prescription and illicit drugs;

e. Failing to test or evaluate Mr. Moore's level of impairment prior to dispensing methadone to him;

f. Failing to make any effort to detox Mr. Moore and/or titrate-down his methadone usage until he abstained from prescription and illicit drug use;

g. Dispensing methadone to Mr. Moore knowing he had driven himself to the facility and would likely leave by driving his vehicle;

h. Failing to monitor Mr. Moore for adverse effects after consuming methadone;

i. Permitting Mr. Moore to leave the facility and drive a vehicle after consuming methadone and becoming impaired;

j. Failing to warn Mr. Moore his driving might be impaired as a result of his methadone consumption;

k. Failing to warn Mr. Moore of adverse drug interactions between methadone and the numerous other prescription and illicit drugs he was known to be using;

l. Dispensing methadone in contravention to laws and regulations designed to ensure the safety of patients and the public;

m. Failing to observe policies and procedure mandated by federal law, including the federal Controlled Substances Act, 21 U.S.C. §§ 821, et seq., and the federal Opioid Treatment Standards, 42 C.F.R. §§ 8.11, et seq.;

n. Failing to observe policies and procedures mandated by state law, including South Carolina Code §§ 44-53-710 et seq. and South Carolina Code Regulations §§ 61-4.101 et seq.; and

      o.      In such other particulars as may be ascertained through discovery undertaken pursuant to the Federal Rules of Civil Procedure.

31. Columbia Metro failed to exercise even slight care in its so-called treatment of Mr. Moore and it knew or should have known that its failure to exercise care in the dispensation of methadone to known drug addicts could create unreasonably dangerous, but entirely preventable, conditions likely to cause serious harm to motorists like Cooper and his grandparents.

32. The fatal injuries and conscious pain and suffering suffered by Decedents was the direct, proximate result of Columbia Metro's negligent, grossly negligent, and reckless conduct.

33. Plaintiffs, on behalf of Decedents' statutory beneficiaries, are entitled to recover all damages, present and prospective, suffered as a result of Decedents' wrongful death, including pecuniary loss, mental shock and suffering, wounded feelings, grief and sorrow, loss of companionship, and deprivation of the use and comfort of Decedent's society.

34. Plaintiffs also incurred burial expenses and other out-of-pocket expenses as a result of Columbia Metro's conduct.

35. By reason of the negligence *per se*, gross negligence, and recklessness of Columbia Metro as set forth above, Plaintiffs are entitled to an award of punitive damages in favor of the estate.

**FOR A SECOND CAUSE OF ACTION**
(Survival – Negligence/Negligence *per se*/
Gross Negligence/Willful, Wanton, and Reckless Conduct)

36. Each of the foregoing paragraphs are incorporated herein.

37. Between the time the collision occurred and the time of their death, Decedents suffered extreme conscious pain and suffering, mental anguish, distress, and shock as a result of the collision and ensuing vehicle fire.

38. Plaintiffs, as Personal Representatives of the Estate of Harry C. Gunnells and Barbara New Gunnells are entitled to judgment against Columbia Metro in an amount sufficient to compensate the estate for damages suffered during Decedents' survival.

39. Plaintiffs are also entitled to an award of punitive damages.

### JURY DEMAND

Plaintiff respectfully demands trial by jury on all claims so triable.

### PRAYER

WHEREFORE, Plaintiffs pray for judgment in this matter in a sum sufficient to adequately compensate the estate and the statutory beneficiaries for damages suffered, for punitive damages sufficient to impress upon the Defendant the seriousness of its conduct, for attorneys' fees and costs incurred in this action, and for all such further relief as the Court deems just and proper.

Respectfully submitted by,

/s/ Mark B. Tinsley
Mark B. Tinsley Fed. ID No. 7160
P.O. Box 1000
265 Barnwell Highway
Allendale, SC 29810
(803) 584-7676
(803) 584-3614 (facsimile)
mark@goodingandgooding.com

ATTORNEY FOR THE PLAINTIFFS

October 4, 2016
Allendale, South Carolina.